The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission REVERSES the decision of the deputy commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. The Travelers Insurance Company is the carrier on risk.
4. A Form 22 was to be submitted to the North Carolina Industrial Commission. However, personnel records for the plaintiff and other employees at The New Cherokee facility in Spindale were destroyed. No Form 22 was submitted.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of documentation from Rutherford Hospital, Paul H. Cartwright, D.C., Eric Rhoton, M.D., Asheville MRI and Mission Memorial, Dan A. Gold, M.D., John E. Davis, M.D., Thoms Rehabilitation Hospital, C. David Tollison, M.D., Steven L. Mendelsohn, M.D., Philip Whitworth, M.D., and Hobart R. Rogers, M.D.
6. Plaintiffs records from Paul H. Cartwright, D.C., were stipulated into evidence as Stipulated Exhibit 1-A.
7. Documentation concerning plaintiffs medical treatment and payments was stipulated into evidence as Stipulated Exhibit 1-B.
***********
Based upon all the competent evidence adduced at the hearing and reasonable inferences therefrom, the Full Commission rejects the findings of fact found by the Deputy Commissioner, and enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 37 years old and had obtained a GED in 1983.
2. Plaintiff began working for defendant-employer in 1985. Plaintiff initially worked for the maintenance department and in the preparation department as a back-winder. Plaintiff was then assigned to the winding department.
3. Plaintiff earned an hourly rate of $7. 50 with a $.50 per shelf premium. Plaintiff worked at least a full forty-hour week.
4. On 9 May 1992, plaintiff was working in the winding department. She bent over in the course of performing her job duties, and felt a pull and pain in her lower back and left hip. Plaintiff reported her pain to her supervisor, Gail Shelton, and asked for permission to go home. Plaintiff presented to Dr. Paul H. Cartwright on 13 May 1992 and underwent conservative treatment. A radiology report dated 11 may 1992 states that there was no evidence of focal disc space narrowing or of a subluxation; nor were there advanced degenerative changes seen. Plaintiffs back and hip pain eventually resolved. Employment records indicate that plaintiff remained out of work through 16 May 1992.
5. On 17 July 1992, plaintiff experienced a specific traumatic incident arising out of and in the course of her employment when she bent over to retrieve a bobbin which was lying on the floor next to her machine. Plaintiff heard something snap in her back and felt an immediate onset of pain. Plaintiffs co-workers notified Gail Shelton, who instructed two of plaintiffs co-workers to drive plaintiff home. Plaintiffs testimony concerning when and how her injury occurred is found to be credible.
6. On 17 July 1992, plaintiff presented to the Rutherford County Hospital Emergency Room for acute pain in her back. A radiological report dated 28 July 1992 indicates a minimal left paracentral bulging or very small focal herniation on the left at L4-L5, and a slightly larger focal right paracentral herniation at L5-S1 with slight flattening of the anterior thecal sac.
7. Plaintiff remained out of work after 17 July 1992. On 7 August 1992, Dr. John Davis performed a lumbar diskectomy at the L4-5 level on the left to repair a herniated nucleus pulposus at the L4-5 on the left. Following the surgery, plaintiff continued to experience radicular pain involving her left hip and extending down her leg.
8. On 17 November 1992, plaintiff returned to work. On 17 December 1992, plaintiff returned to Dr. Davis with complaints of continuing pain which Dr. Davis attributed to aggravation caused by the bending plaintiff was required to do at work. According to her attendance records, plaintiff continued to work through 27 December 1992, when she began a leave of absence.
9. On 4 January 1993, Dr. Davis examined plaintiff. In his opinion, plaintiffs leave of absence had provided her with relief from those factors of her job which aggravated her injury.
10. Plaintiffs leave of absence expired on 28 February 1993, and she returned to work. Following a 27 April 1993 examination, Dr. Davis opined that plaintiffs return to work had reaggravated her back. On 11 May 1993, Dr. Davis released plaintiff from his care and rated her as having a 5% permanent partial disability to her back, based upon the North Carolina Industrial Commissions Rating Guide.
11. On 12 May 1993, plaintiff returned to Dr. Cartwright with complaints of low back pain on the left into the left hip and leg. Dr. Cartwrights examination revealed a positive Kemp maneuver, reduced lumbar flexion, and a diminished left Achilles reflex. Dr. Cartwright related plaintiffs current condition to the 17 July 1992 specific traumatic incident and the subsequent repetitive bending required by plaintiffs job, which irritated the particular area of the spine and led to a weakening of the tissue, ultimately leading to the rupturing of the disk.
12. Plaintiff went out of work from 1 June 1993 through 1 August 1993. Plaintiff again went out of work on 13 August 1993. She has not returned to work.
13. In July 1993, Dr. Cartwright referred plaintiff to neurosurgeon, Dr. Eric L. Rhoton. Dr. Rhotons examination showed a diminished range of motion of the lumbar spine and left hip pain upon right side straight leg raising. He diagnosed plaintiff with low back and left lower extremity pain syndrome with some evidence of left-sided sciatica and a left lumbar sensory radiculopathy. Dr. Rhoton ordered a lumbar MRI scan.
14. The MRI revealed an L4-5 disk herniation to the left side, and a bulging disk at the L5-S1 level. Dr. Rhoton planned surgical treatment with a left L4-5 microlumbar diskectomy. The surgery was performed on 2 September 1993.
15. Plaintiff returned to Dr. Rhoton on 29 September 1993with some residual left hip pain and left L5 sensory radiculopathy. An examination on 23 November 1993 showed significant improvement in plaintiffs left leg pain with mild intermittent radiculitis.
16. After reviewing Dr. Rhotons notes from 23 November 1993, Dr. Cartwright gave plaintiff a 25% permanent partial disability rating to her back, based upon the North Carolina Industrial Commission Ratings Guide. Dr. Cartwright had not seen plaintiff since 6 August 1993, and was unable to offer an opinion as to whether plaintiff had reached maximum medical improvement.
17. In January 1994, plaintiff presented to Dr. Rhoton with increasing numbness in her left leg and foot. On 4 February 1994, she reported the numbness continuing, and the onset of neck pain, interscapular pain and left arm pain. Dr. Rhoton diagnosed recurrent low back and left leg pain syndrome, and neck interscapular and left arm pain syndrome without motor or sensory deficit. Plaintiff was treated conservatively with medication.
18. Plaintiffs complaints had not diminished by June 1994, and Dr. Rhoton recommended a cervical and lumbar MRI. While the MRI revealed some minimal disk bulging at the L4-5, L5-S1 level, Dr. Rhoton did not see significant bulging sufficient to warrant further surgery. He recommended treatment with anti-inflammatory medications.
19. On 27 December 1994, Dr. Rhoton found that plaintiff had reached maximum medical improvement and released her to return to work in a light or sedentary job with no lifting of more than twenty pounds and no repetitive bending or twisting.
20.This is not a case of admitted liability; therefore, plaintiff does not have a presumption of continuing disability.
21. In cases where there is no agreement as to the liability of a defendant in a claim for compensation, the plaintiff has the burden of showing that he or she is unable to earn the same wages that were earned prior to the injury, either in the same or other employment. Plaintiff in this case has been released to return to light duty work by Dr. Rhoton. She has not demonstrated that she has made a reasonable but unsuccessful effort to obtain employment. Plaintiff has not presented evidence that her age, experience, and/or education would render a job search futile. For these reasons, the Full Commission finds that plaintiff retains some wage earning capacity within the restrictions recommended by Dr. Rhoton.
22. Because of the destruction of plaintiffs employment records, no Form 22 Wage Chart has been submitted into evidence. The sole evidence of plaintiffs earnings consists of a defendant-employer statement of plaintiffs earnings encompassing 13 weeks from 1 May 1992 through 31 July 1992, which totals $4,657. 15. Because this total includes two weeks where plaintiff earned nothing as a result of her job related injuries in May and July 1992, to divide the total by 13 to determine an average weekly wage would produce an unfair result. The Full Commission finds as fact that the method which would result in an average weekly wage determination which is fair to all parties is to divide the total wages from 1 May 1992 through 31 July 1992 by 11. This results in an average weekly wage of $423. 37, yielding a weekly compensation rate of $282. 26.
23. Plaintiff received short-term disability benefits from a fully company funded plan for 13 weeks in 1992 and for an additional 13 weeks in 1993.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The loss of plaintiffs personnel records constitutes an exceptional reason why the methods for calculating an average weekly wage contained in N.C. Gen. Stat. 97-2(5) would produce an unfair result to the parties in this case. Accordingly, the Full Commission has applied the only evidence presented of plaintiffs earnings to reach a fair and just calculation which will most nearly approximate the amount which plaintiff would be earning were it not for the injury. N.C. Gen. Stat. 97-2(5).
2. On or about May 8, 1992, plaintiff sustained an injury as a result of a specific traumatic incident arising out of and in the course of her employment with defendant-employer, for which she is entitled to medical treatment to be paid for by defendants. N.C. Gen. Stat. 97-2(6), 97-25.
3. On 17 July 1992, plaintiff sustained an injury as a result of a specific traumatic incident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
4. The burden is on the employee to show that he or she is unable to earn the same wages that were earned prior to the injury. This may be shown one of four ways: (1) by producing medical evidence which supports the conclusion that the employee is incapable of work in any employment; (2) with evidence that the employee is capable of obtaining some employment but, after a reasonable effort has been unable to obtain employment; (3) with evidence that the employee is capable of some work but due to other factors such as age, education, inexperience, etc., seeking work would be futile; or (4) with evidence that the employee is employed at a wage less than that earned prior to the injury. Russell v. LowesProd. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. In this case, plaintiff has failed to meet her burden of showing continuing disability. She has been released to return to work by her treating physician. She has not made a reasonable effort to obtain employment within her restrictions. Her age, education, experience and training do not render a search for employment futile. For these reasons, plaintiff is not entitled to continuing total disability compensation beyond the date upon which she reached maximum medical improvement. Id.
6. As a result of plaintiffs 17 July 1992 injury, she was temporarily and totally disabled from 17 July 1992 through 16 November 1992, from 28 December 1992 through 28 February 1993, from 1 June 1993 through 1 August 1993, and from 13 August 1993 through 27 December 1994. Plaintiff is entitled to temporary total disability compensation at the rate of $282. 26 for these periods. N.C. Gen. Stat. 97-29.
7. Plaintiff is entitled to compensation for 75 weeks in a lump sum payment of $21,169. 50 for a 25% permanent partial disability rating to her back. N.C. Gen. Stat. 97-31(23).
8. Defendants are entitled to a deduction from the above award for payments made to plaintiff pursuant to a short-term disability plan as those payments were not due and payable when made. N.C. Gen. Stat. 97-42.
9. Plaintiff is entitled to have defendants pay for any past and future medical treatment related to her compensable injury and reasonably necessary to effect a cure, give relief, or lessen plaintiffs period of disability, including the two surgeries on plaintiffs back. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff weekly compensation in the amount of $282. 26 from 17 July 1992 through 16 November 1992, from 28 December 1992 through 28 February 1993, from 1 June 1993 through 1 August 1993, and from 13 August 1993 through 27 December 1994. Payment shall be made in a lump sum and subject to attorneys fees as discussed below.
2. Defendants shall pay plaintiff the lump sum of $21,169. 50 in compensation for a 25% permanent partial disability rating to her back, subject to attorneys fees as discussed below.
3. Defendants shall be entitled to a deduction for any payments made to plaintiff pursuant to a short-term disability plan during the period of her disability in 1992 and 1993.
4. Defendants shall pay for all past and future medical treatment incurred by plaintiff which is related to her compensable back injury, including the two surgeries on her back.
5. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25% of the award contained in paragraphs 1 and 2 above. Payment shall be made directly to plaintiffs counsel.
6. Defendants shall pay the costs of this action.
This the ___ day of July, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER